IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 23, 2022

## LANCE FALCON v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No. 110274   Kyle A. Hixson, Judge**

_____

**No. E2021-00398-CCA-R3-PC**

_____

The Petitioner, Lance Falcon, appeals the denial of post-conviction relief from his convictions for rape, statutory rape by an authority figure, and sexual battery by an authority figure, arguing that his trial counsel was ineffective for not objecting to the trial court's questioning of the Petitioner during his testimony before the jury and that his trial counsel and appellate counsel were ineffective for not raising an objection to the lack of merger and/or violation of double jeopardy as to count three of the indictment. Based on our review, we affirm the judgment of the post-conviction court denying relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN W. CAMPBELL, SR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and TIMOTHY L. EASTER, JJ., joined.

Gerald Gulley, Knoxville, Tennessee, for the appellant, Lance Elliott Falcon.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Sr., Assistant Attorney General; Charme P. Allen, District Attorney General; and Tammy Hicks, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTUAL AND PROCEDURAL BACKGROUND

The Petitioner was convicted by a jury of one count of rape, one count of statutory rape by an authority figure, and one count of sexual battery by an authority figure and was sentenced by the trial court to an effective sentence of twelve years in the Department of Correction at 100%. This court affirmed the Petitioner's convictions, and our supreme

court denied his application for permission to appeal. *State v. Lance Elliott Falcon,* No. E2015-00935-CCA-R3-CD, 2018 WL 3148003 (Tenn. Crim. App., Aug. 17, 2016), *perm. app. denied* (Tenn. Dec. 14, 2016).

The proof adduced in the original trial was as follows:

In early 2010, the victim moved in with her mother and the [Petitioner], who had been married for some three years, after having lived with her father since her parents' divorce. The three lived in a mobile home in Knox County. On July 4, 2010, the victim's mother went to work while the victim remained home with the [Petitioner]. At some point that evening, the victim fell asleep on the couch and awoke later to find the [Petitioner] "on top of" her "with his mouth in places that it shouldn't be." The victim testified that the [Petitioner] had her shorts and underwear "pulled to the side" and that his mouth was on her "vagina." After the victim "pushed him off ... and told him to quit," the [Petitioner] went into her mother's room and stayed there until he left to pick her mother up from work.

The victim said that in the weeks that followed, the [Petitioner] endeavored to ensure that the victim was not left alone with anyone other than him, and he refused to allow her to "talk to anybody on [her] cell phone unless [she] was sitting next to [the Petitioner] on speaker phone so he could hear everything everyone said." At some point, the [Petitioner] "went somewhere," and the victim telephoned her father and "told him to hurry and come get" her. While staying with her father, the victim revealed the assault to her sister's boyfriend on August 6, 2010. She then told her sister and her father, who reported the abuse to authorities. Following her revelation, the victim was interviewed by Knoxville Sheriff's Office Detectives and personnel at the Child Advocacy Center.

The victim participated in two recorded telephone conversations with the [Petitioner], one initiated by her and one initiated by the [Petitioner]. During the two calls, the [Petitioner] apologized to the victim and promised not to touch her again should she return home. Audio recordings of the telephone calls were played for the jury.

The [Petitioner] testified on his own behalf and denied the allegations. He acknowledged, as he did in his pretrial statement to the police, kissing the victim on July 4, 2010. He also acknowledged having inadvertently touched the victim inappropriately while they were performing cheerleading stunts in the pool, explaining,

- 2 -

She had showed some expression to me that she liked cheerleading and was interested in it, and I myself varsity lettered in cheerleading in high school, so I was excited that we had some kind of a common interest. ... And so, that was showing that there was something that I could work with her towards, and I ... tried to do that by showing her techniques and things. Well, we used the pool as a spotter basically.

The [Petitioner] claimed that he thought the victim was referring to the swimming pool incident during the recorded telephone calls, saying,

There in the initial conversation, the first phone call, my preconception of what was being expressed was an incident that took place at a pool where there was some slight physical contact and then it progressed into something that was beyond what I could comprehend at that time, I might say—try to control the situation a little bit and get her feeling comfortable with me so she would just come home.

He added that "[t]here's other things that led up to this conversation that could've been misinterpreted on her part as more affection than what it actually was." He testified that his understanding of the conversation was hampered by poor cellular telephone reception and the fact that he had "smoked one and a half joints at that time in the morning." The [Petitioner] acknowledged that he had apologized to the victim for touching her inappropriately but said that he had done so only because he and her mother wanted the victim to come home. He said that his inability to understand effectuated by his smoking marijuana carried over into his interview with the police.

The [Petitioner] testified that the victim had responded negatively to efforts to discipline her for misbehavior after she moved in with him and his wife. He added that the victim did not want to attend a different high school and bristled at requirements that she put more effort into her studies.

The [Petitioner] denied that he had prevented the victim from going anywhere alone and stated that he often transported the victim to her aunt's or her grandmother's house or to stay with her father.

The victim's mother testified on behalf of the [Petitioner] that she believed the victim had manufactured the allegations so that she would be permitted to move back in with her father. She said that the victim "lies" and that the victim had responded negatively to their efforts to discipline her after she moved in with them. The victim's mother said that the victim was alone with her on more than one occasion after July 4, 2010, and before she reported the incident to her sister's boyfriend. She added that the victim also spent time alone with her maternal aunts and her maternal grandmother during that same time. She said that the victim did not report the abuse to anyone during this time and did not behave any differently toward the [Petitioner].

Two of the victim's maternal aunts and one maternal uncle testified that the victim had not behaved any differently toward the [Petitioner] after July 4, 2010. Her two aunts testified that they had spent time alone with the victim between July 4, 2010, and August 6, 2010, and that the victim had spent time alone with her maternal grandmother.

Based upon this evidence, the jury convicted the [Petitioner] as charged of rape, statutory rape by an authority figure, and sexual battery by an authority figure.

*Id.* at *1-2.

## Petition for Post-Conviction Relief

The Petitioner filed a timely petition for post-conviction relief in which he raised a claim of ineffective assistance of trial and appellate counsel and a claim that the trial court caused constitutional error by questioning the Petitioner during his trial testimony before the jury. As a result of this latter claim, the judge who had presided over the trial recused himself, and a different judge was designated to handle the post-conviction proceedings.

## Evidence Adduced at the Post-Conviction Hearing

The Petitioner testified that trial counsel, a public defender, was appointed to represent him after he had initially been represented by several other attorneys. The Petitioner stated that he and trial counsel had only three "solid meetings" before the case was tried. He could not remember how long these meetings lasted but did recall that he and trial counsel discussed which witnesses should be called for trial. The Petitioner testified that the most serious evidence against him was the recorded phone calls between him and the victim. He said that trial counsel provided him copies of the phone recordings

- 4 -

and discussed with him the advantages and disadvantages of the Petitioner's testifying in his own defense. The Petitioner claimed that he had a mental breakdown during this time, which necessitated a delay in the trial preparation proceedings until he was mentally fit to continue. Because of the mental breakdown the Petitioner had experienced, trial counsel expressed concerns to the Petitioner about his testifying at trial, but the Petitioner ultimately decided to testify to explain his side of the recorded telephone calls.

The Petitioner testified that he was shocked by the trial court's questioning of him during the trial and wanted trial counsel to object and request a mistrial. Trial counsel, however, neither objected nor asked for a mistrial. The Petitioner expressed his belief that trial counsel's failure to do so constituted deficient performance, which deprived the Petitioner of his right to a fair trial.

The Petitioner also expressed his belief that his conviction for sexual battery by an authority figure should have been merged into either his conviction for rape or his conviction for statutory rape by an authority figure and that his separate convictions resulted in his being subjected to double jeopardy. The Petitioner testified that neither his trial counsel nor his appellate counsel ever raised the issue.

The Petitioner testified that he never talked to his appellate counsel while the appeal was pending. The Petitioner said that he wanted to participate in his appeal but his appellate counsel did not include him in the process. The Petitioner claimed that the only communication he ever had with appellate counsel was when his convictions were affirmed by this court and the supreme court declined to grant his application for permission to appeal. He said appellate counsel sent him a letter informing him that the public defender's office was no longer representing him and giving him information about what next steps were available to him.

Appellate counsel, called as a witness for the Petitioner, testified that he had been an attorney in the public defender's office since 2014 and was primarily assigned to handle the appellate work in the office. He said he was assigned to prepare the Petitioner's appeal while the motion for new trial was pending and assisted in the preparation of the motion for new trial. Appellate counsel testified that he kept the Petitioner informed of the status of the appeal and sent him copies of the appellate briefs. He said he communicated with the Petitioner solely by mail and that his last communication with the Petitioner was to inform him that his appeal to the Tennessee Supreme Court had been denied and that the public defender's office would no longer be representing him.

Appellate counsel testified that he raised the trial court's questioning of the Petitioner during trial as a ground for appeal, arguing that it was plain error because it amounted to the trial court's impermissible commentary on the evidence and an attack on

the Petitioner's credibility. Appellate counsel testified that this court found that the trial court's action was error but that the error was harmless.

When asked if he considered raising as an issue on appeal the trial court's failure to merge the sexual battery conviction in count three into one of the rape convictions, appellate counsel responded that he knew that the election argument was not a valid ground because the crime consisted of one factual episode. As to merger, appellate counsel testified that he never thought of that claim at all.

Trial counsel, called as a witness by the State, testified that he had just retired from a thirty-year career as an assistant public defender. During his career, he tried a number of cases, including approximately five that were similar to the Petitioner's. According to trial counsel's records, he met with the Petitioner between thirteen and fifteen different times during his preparation of the instant case. During those meetings, he and the Petitioner discussed a number of topics, including the State's evidence against the Petitioner, potential defense witnesses, and whether the Petitioner would testify in his own defense. With respect to the latter topic, trial counsel testified that he and the Petitioner thoroughly discussed the pros and cons of the Petitioner's testifying at trial, with trial counsel expressing his concern that the Petitioner would say too much and would not fare well on cross-examination. Ultimately, the Petitioner made the choice to testify.

Trial counsel testified that he was shocked when the trial court began questioning the Petitioner about the credibility of the victim. Counsel said he thought the trial court, by doing so, was not only improperly commenting on the evidence but also attacking the credibility of the Petitioner. Trial counsel testified that his failure to object or to request a mistrial was not part of his trial strategy but simply because he was so shocked by the trial court's action that he did not think to object or request a mistrial.

When asked whether he should have requested that the State make an election of offenses, trial counsel responded that he did not think that an election was required, because the alleged crimes were all the result of one criminal episode. Asked whether count three should have been merged into count one or two, trial counsel responded that he did not consider merger and was still unsure if merger would be proper.

On April 8, 2021, the post-conviction court entered an order denying the petition for post-conviction relief. The court found that the issue of whether the trial court's questioning of the Petitioner prejudiced his case had been previously determined by this court when, after plain error review, this court concluded the conduct of the trial judge was harmless. Therefore, the post-conviction court found that the Petitioner was unable to meet his burden of demonstrating prejudice as a result of trial counsel's failure to object to the trial court's questioning. The post-conviction court also found that the Petitioner failed to

show either a deficiency in counsel's performance or prejudice to his case as a result of trial counsel's failure to request merger of the offenses.

## ANALYSIS

Although the Petitioner alleged a number of instances of ineffective assistance of both trial and appellate counsel in his *pro se* and amended petitions, he confines himself on appeal to the following issues: (1) whether trial counsel was ineffective for failing to object to the trial court's questioning of the Petitioner in front of the jury; (2) whether trial counsel and appellate counsel were ineffective for not seeking a merger of count three into counts one or two; and (3) whether the cumulative effect of trial counsel's deficiencies in representation deprived the Petitioner of his right to a fair trial.

### Post-Conviction Standard of Review

Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. The petitioner bears the burden of proving factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. *See Wiley v. State*, 183 S.W.3d 317, 325 (Tenn. 2006). When reviewing factual issues, the appellate court will not reweigh the evidence and will instead defer to the post-conviction court's findings as to the credibility of witnesses or the weight of their testimony. *Id.* However, review of a post-conviction court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. *See Ruff v. State*, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001); *Burns v. State*, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The *Strickland* standard is a two-prong test:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 688; *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). The reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, *see Strickland*, 466 U.S. at 690, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. *See Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982).

The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Courts need not approach the *Strickland* test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697; *see also Goad*, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim.").

The Petitioner first argues that trial counsel was ineffective for failing to make a contemporaneous objection to the trial court's improper questioning of the Petitioner, thereby waiving plenary review of the issue on appeal. The post-conviction court, however, found that the issue had been previously determined by this court on direct appeal and was therefore not a proper ground for post-conviction relief.

We agree with the post-conviction court. Appellate counsel raised the trial court's improper questioning of the Petitioner as an issue on direct appeal, where this court, reviewing for plain error, found that the trial court's actions did not materially affect the outcome of the case. Tennessee Code Annotated section 40-30-106(h) states:

(h) A ground for relief is previously determined if a court of competent jurisdiction has ruled on the merits after a full and fair hearing. A full and fair hearing has occurred where the petitioner is afforded the opportunity to call witnesses and otherwise present evidence, regardless of whether the petitioner actually introduced any evidence.

The post-conviction court was correct in finding that this ground had been previously determined on direct appeal. Moreover, our finding on direct appeal that the conduct of the trial court did not result in prejudice to the Petitioner's case means that the Petitioner cannot meet the prejudice prong of his ineffective assistance of counsel claim with respect to this allegation. We, therefore, conclude that the post-conviction court properly denied relief on this claim.

The Petitioner next argues that trial counsel and appellate counsel were ineffective for not requesting that the conviction for sexual battery by an authority figure be merged into the conviction for rape or the conviction for statutory rape by an authority figure. With respect to this allegation, the post-conviction court found that the Petitioner failed to show either a deficiency in representation or prejudice to his case.

We, again, agree with the post-conviction court. On direct appeal, the Petitioner raised sufficiency of the evidence as to each of his convictions. Upon review, this court found that the proof adduced was sufficient for a jury to return guilty verdicts on each count. Thus, even though the Petitioner's charges arose from one criminal episode, each count was a separate and distinct crime. In *State v. Watkins*, 362 S.W.3d 530 (Tenn. 2012), our supreme court stated:

> If the threshold is surpassed, meaning the convictions arise from the same act or transaction, the second step of the *Blockburger* test requires courts to examine the statutory elements of the offenses. If the elements of the offenses are the same, or one offense is a lesser included of the other, then we will presume that multiple convictions are not intended by the General Assembly and that multiple convictions violate double jeopardy. However, if each offense includes an element that the other does not, the statutes do not define the "same offense" for double jeopardy purposes, and we will presume that the Legislature intended to permit multiple punishments.

*Id.* at 557.

Also, on direct appeal, the Petitioner raised a claim that his sentence was excessive. This court reviewed the Petitioner's sentencing and found that the effective sentence of

twelve years was proper and supported by the enhancement factors found by the trial court, which followed the proper application of the principles and purposes of the sentencing act. We, therefore, conclude that the post-conviction court properly denied relief on the basis of this claim.

We, further, conclude that the Petitioner has failed to show that cumulative errors occurred that deprived him of his right to a fair trial. We, therefore, affirm the denial of the petition for post-conviction relief.

## **CONCLUSION**

After review and finding no error, the judgment of the trial court is affirmed.

_____
JOHN W. CAMPBELL, SR., JUDGE